WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jon Brian McConnell, | No. CV-15-02386-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | |

Pro se Plaintiff Jon Brian McConnell seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying his application for benefits under the Social Security Act (the Act). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1. For the following reasons, the Court reverses the Commissioner's decision and remands for a determination of benefits.

## I.     Procedural Background

On July 25, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Act. (Tr. 13.)[1] Plaintiff alleged disability beginning October 14, 2007. (*Id*.) After the Social Security Administration (SSA) denied Plaintiff's initial application and his request for reconsideration, he requested a hearing before an administrative law judge (ALJ). (*Id*.) During the hearing,

---

[1] Citations to Tr. are to the certified administrative transcript of record. (Doc 10.)

Plaintiff amended the alleged disability onset date to March 2011.  (Tr. 33-34.)  After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act.  (Tr. 13-25.)  This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review.  (Tr. 1-6; *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council).)   Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.    Administrative Record

The record before the Court establishes the following history of diagnoses and treatment related to Plaintiff's alleged impairments.  The record also includes opinions from Plaintiff's treating physician and state agency physicians who reviewed the records related to his impairments, but who did not examine Plaintiff or provide treatment.

### A.    Treatment History

The parties do not discuss Plaintiff's treatment history in detail.  (Docs. 11, 12.)  Rather, they rely on the ALJ's discussion of Plaintiff's treatment history.  The record reflects that Plaintiff received ongoing treatment for chronic back pain before and after he had back surgery in 2006.  (Tr. 227-36; Tr. 363, Tr. 382-401, Tr. 404-43, Tr. 452-70.)  Plaintiff had lumbar fusion surgery at L3-4 and L4-5 on January 6, 2006.  (Tr. 454.)  Plaintiff reported that surgery helped his pain until 2010, when his symptoms began to recur.  (Tr. 458.)  Plaintiff also had chiropractic treatment, physical therapy, and epidural injections.  (Tr. 382, 387, 392-401, 454.)  Plaintiff saw Kenneth Fisher, M.D. regularly for his chronic back pain.  (Tr. 404-43, 534-46, 606-14.)

Plaintiff was treated for depression at West Valley Behavioral Health.  (Tr. 475-94)   Plaintiff was assessed with depression and assessed a Global Assessment of Functioning (GAF) score of 54.  (Tr. 479, 567.)  An April 4, 2013 treatment note states that Plaintiff was angry with the world and felt hopeless and frustrated.  (Tr. 561.)

B.    **Opinion Evidence**

1.    **Dr. Fisher's Opinions**

a.    **March 4, 2013 Opinion**

On March 4, 2013, Dr. Fisher completed a medical source statement.  (Tr. 562-65.)  He stated that he had been Plaintiff's primary care physician since December 18, 2002, and had treated Plaintiff for back issues and other primary care needs.  He identified Plaintiff's diagnoses as "failed back syndrome with associated fatigue, sleep disturbance, and depression of a chronic nature."  (Tr. 563.)  Dr. Fisher stated that Plaintiff had pain in his lumbar, sacral, and thoracic spine.  (Tr. 562.)  He also stated that Plaintiff was always in pain and that "simple activities" exacerbated his pain.  (*Id.*)  Dr. Fisher opined that Plaintiff's condition had declined over the past two years and that he was unable to perform gainful work due to chronic back pain.  (*Id.*)

Dr. Fisher further opined that Plaintiff could not stand continuously for six hours.  (Tr. 563.)  If Plaintiff were stationary, pain would set in within about ten to fifteen minutes of standing.  (*Id.*)  Plaintiff's pain would persist, but be more tolerable with mild activity and he could tolerate up to an hour of standing under those conditions.  (*Id.*)  Dr. Fisher opined that Plaintiff could sit for one to two hours "until his pain level [reached] a 9 or 10 on a scale of 1 to 10."  (Tr. 564.)  He opined that changing positions from sitting to standing seemed to help, but Plaintiff could not endure sitting or standing for the length of time required for "adequate job performance."  (*Id.*)

Dr. Fisher opined that Plaintiff had to lie down during the day.  (*Id.*)  He also opined that some days Plaintiff could walk several blocks, and other days he could not walk at all depending on his level of pain and fatigue.  Dr. Fisher opined that Plaintiff could frequently lift ten to twenty pounds and could frequently carry eleven to twenty pounds.  (*Id.*)  Dr. Fisher found that Plaintiff was unable to push or pull "anything that has resistance."  (*Id.*)  He found Plaintiff "severely limited" in his abilities to bend, squat, kneel, and to perform "torsional movements of his body."  (*Id.*)  Dr. Fisher stated that Plaintiff "was constantly observed getting up, sitting down, and moving in a deliberate

and paced manner that is consistent with chronic back pain."  (Tr. 565.)  Dr. Fisher concluded that Plaintiff could not return to his past job because it required seventy miles of travel each way and Plaintiff could not safely drive or travel as a passenger that distance without requiring a period of rest such as lying down or napping.  (*Id.*)  He also explained that Plaintiff would have trouble sitting or standing more than thirty minutes to an hour before having to change positions.  (*Id.*)  Dr. Fisher did not expect Plaintiff's condition to change.  (*Id.*)

### b.      April 4, 2013 Opinion

On April 4, 2013, Dr. Fisher completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  (Tr. 530-32.)  He identified Plaintiff's diagnoses as chronic lumbago, sciatica, and spondylosis.  (Tr. 530.)  Dr. Fisher opined that Plaintiff could occasionally and frequently lift or carry ten pounds.  (*Id.*)  He opined that because of his chronic back pain and sciatica, Plaintiff could stand or walk less than two hours in an eight hour even if the "activity may be intermittent throughout the day."  (Tr. 531.)  Dr. Fisher opined that Plaintiff could sit for less than six hours in an eight hour day and specified that Plaintiff could sit for thirty minutes during that time period.  (*Id.*)  He stated that Plaintiff was unable to sit and unable to drive "due to pain that is immediate and that increases with duration."  (*Id.*)  Dr. Fisher further found that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds.  (Tr. 532.)  He found that Plaintiff could occasionally reach, handle, finger, and feel.  (*Id.*)  Dr. Fisher opined that Plaintiff should avoid working around excessive noise.  (*Id.*)

### c.      February 11, 2014 Opinion

On February 11, 2014, Dr. Fisher completed a Treating Physician's Statement. (Tr. 599.)  He stated the he continued to treat Plaintiff and opined that his limitations were "essentially the same as in March/April 2013 when [he] previously provided functional information" about Plaintiff.  (*Id.*)  He opined that Plaintiff needed to lie down periodically throughout the day to relieve his pain, Plaintiff's symptoms would likely increase in a sustained working environment for eight hours a day, and Plaintiff's

impairments would produce better days and worse days.  (Tr. 599.)  Dr. Fisher estimated that Plaintiff would be absent, tardy, or need to leave work early more than three times a month.  (*Id.*)  He indicated that Plaintiff's condition had declined over the past two years and stated that Plaintiff had been unable to sustain work since 2011, "definitely since his reinjury [of his back] in 2012."  (*Id.*)

### 2.      D. Rowse, M.D., and Ernest Griffith, M.D.

On December 8, 2012, state agency physician Dr. Rowse reviewed the record and completed a medical source statement.  (Tr. 91-96.)  Dr. Rowse opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk (with normal breaks) for six hours in an eight hour day, and sit (with normal breaks) for a total of six hours.  (Tr. 93.)  She opined that Plaintiff's need to alternate sitting and standing could be accommodated by a brief stretch break every hour.  (Tr. 93-94.)  On May 28, 2013, Ernest Griffith, M.D., reviewed the record and concurred in Dr. Rowse's assessment.  (Tr. 105.)

### 3.      Nicole Lazorwitz, Psy.D

On May 23, 2013, Dr. Lazorwitz reviewed the record and completed a medical source statement.  (Tr. 105-17.)  Dr. Lazorwitz opined that Plaintiff could carry out simple instructions, follow simple work-like procedures, and make simple work-like decisions.  (Tr. 115.)  She opined that Plaintiff had a fair ability to sustain attention up to two hours at a time, and a fair ability to perform at a consistent pace if he were engaged in a simple, repetitive task.  (*Id.*)  She opined that Plaintiff had an adequate ability to maintain a regular work schedule and a fair ability to respond to basic work setting changes.  (*Id.*)  Plaintiff also had a fair to good ability to organize himself independently and set goals.  (*Id.*)

### 4.      James Tuggle, M.D.

On February 6, 2014, Dr. Tuggle wrote a letter on Plaintiff's behalf.  (Tr. 644.)  He stated that he was treating Plaintiff at Desert Sierra Medical.  He stated that a sleep study indicated that Plaintiff had sleep apnea and low oxygen saturation throughout the

night.  (*Id.*)  He opined that these issues could exacerbate Plaintiff's pain.  (*Id.*)  He did not assess Plaintiff's functional abilities.  (*Id.*)

### III.   Administrative Hearing Testimony

Plaintiff was in his early fifties at the time of his amended alleged disability onset date and on the date his insurance coverage expired.  (Tr. 15, 197.)  He had a high school education and had attended but not completed college.  (Tr. 38.)  He had past relevant work as a sales person.  (Tr. 15-25.)

Plaintiff testified at the administrative hearing that he stopped working in 2007 due to low and mid back pain.  (Tr. 42)  Plaintiff had spinal fusion in 2006 that had helped his pain for a period of time.  (Tr. 43-44.)  However, his job at that time required a long commute and he was having increased back pain.  (Tr. 45, 51, 61.)  In 2011, Plaintiff's back went out when he was doing "core strengthening."  (Tr. 45.)  Plaintiff testified that he tried various treatment modalities including physical therapy, chiropractic care, traction, acupuncture, epidural injections, and hot yoga.  (Tr. 46.)  Plaintiff, however, continued to have pain.  (Tr. 46, 49.)  In April 2012, Plaintiff's back went out again when he was doing some painting for a friend.  (Tr. 47-48.)

Plaintiff testified that hydrocodone helped his pain, but that his symptoms varied from day to day even when taking the medication.  (Tr. 50.)  He stated that medication "take[s] the edge off, but [the pain] doesn't completely go away."  (Tr. 55, 62. 65.)  Plaintiff testified that even with pain medication, he had trouble performing at a persistent pace or completing projects.  (Tr. 62.)  He testified that he lies down in a zero gravity chair throughout the day to relieve his pain.  (Tr. 51, 53, 65.)  Plaintiff testified that he could not sit or stand for eight hours a day even if he were allowed to alternate positions.  (Tr. 54.)  He explained that he gets some pain relief the first time he changes positions, but the pain builds over time.  (*Id.*)  Plaintiff stated that he gets pain after about fifteen or twenty minutes of standing.  (Tr. 64.)  Plaintiff testified that he is uncomfortable sitting.  (Tr. 56.)  He testified that he can sit at a computer for thirty minutes at a time, but just a few times throughout the day.  (Tr. 52-53.)  He testified that

he can drive, but not for very long because the pain builds the longer he sits.  (Tr. 61.)  As an example, Plaintiff stated that during a trip he took with his wife, he was uncomfortable "every five minutes," and had pain in thirty minutes, "bad pain" in an hour, and had to pull over to take medication after two hours.  (Tr. 61-62.)  Plaintiff testified that his low and mid back pain is "not going away," and that it is a "365-day-a-year thing."  (*Id.* at 54, 56.)  Plaintiff testified that he has sleep problems.  (Tr. 56-57.)  Plaintiff also testified that he had depression and became agitated.  (Tr. 59-60.)

Plaintiff testified that he was self-employed as a singer, but that it had "gotten to be too much" because of his back pain.  (Tr. 38-39, 55.)  Plaintiff testified that he did some grocery shopping, mowed his lawn with a power mower for a duration of five to six minutes, and did other light yard work with his wife's help.  (Tr. 68-69.)

A vocational expert testified that an individual with the residual functional capacity (RFC) that the ALJ assessed could not perform Plaintiff's past work.[2]  (Tr. 18, 76-77.)  However, such an individual could perform work as a cashier, marker, or routing clerk,   (Tr. 77-78.)  The vocational expert testified that a person with the RFC the ALJ assessed, who would also be absent more than three times a month, or tardy, or have to leave work early more than three times a week, would not be able to sustain employment.  (Tr. 79-80.)   The vocational expert also testified that there would be no work for an individual who had to lie down during the work day.  (Tr. 81.)  The vocational expert further testified that a person who would be off-task for ten percent of a workday would be unable to sustain employment.  (Tr. 85.)

## IV.   The ALJ's Decision

A claimant is considered disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard

---

[2] *See infra* p. 9.

for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

### A.    The Five-Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which he may be found disabled at steps three through five. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404.    20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant numbers in the national economy, considering the claimant's RFC, age, work experience, and education.    20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B.    The ALJ's Application of the Five-Step Evaluation Process

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended disability onset date, March 2011. (Tr. 15.) At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease; failed back syndrome; depression; obesity; and thoracic spine degenerative disc disease (20 CFR § 404.1520(c))." (*Id.*) At

step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (Tr. 16.)

The ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(a)," subject to several limitations.  (Tr. 18.)  The ALJ clarified that Plaintiff could "frequently lift and carry weights of ten pounds [and] occasionally lift and carry weights of 20 pounds."  (*Id.*)  He could stand or walk for a total of six hours in an eight hour day, "sit for a total of six out of eight hours; he must change positions of sitting and standing and could not be in either position for more than 30 minutes at one time."  (*Id.*)  The ALJ also found that Plaintiff had no limits on pushing and pulling within the assessed weight limits.  (*Id.*)  He could "frequently balance; frequently climb ramps and stairs; occasional[ly] climb[] ladders, ropes and scaffolds; occasional[ly] stoop[], kneel[], crouch[] and crawl[]."  (*Id.*)  He should "avoid concentrated exposure to hazards."  (*Id.*)  Additionally, the ALJ concluded that Plaintiff could "understand, remember and carry out simple work tasks."  (*Id.*)

The ALJ found that Plaintiff could not perform his past relevant work, but could perform other work that existed in significant numbers in the national economy.  (Tr. 22-24.)  She concluded that Plaintiff was not under a disability as defined in the Act from October 14, 2007 through September 30, 2013, his date last insured.  (Tr. 25.)  Therefore, the ALJ denied Plaintiff's application for a period of disability and disability insurance benefits.  (*Id.*)

## V.    Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the

1    ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are

2    harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

3        Substantial evidence means more than a mere scintilla, but less than a

4    preponderance; it is "such relevant evidence as a reasonable mind might accept as

5    adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

6    (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).   In

7    determining whether substantial evidence supports a decision, the court considers the

8    record as a whole and "may not affirm simply by isolating a specific quantum of

9    supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal

10   quotation and citation omitted).   The ALJ is responsible for resolving conflicts in

11   testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*,

12   53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to

13   more than one rational interpretation, [the court] must defer to the ALJ's conclusion."

14   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing

15   *Andrews*, 53 F.3d at 1041).

16   **VI.   Plaintiff's Claims**

17       Plaintiff's opening brief includes the following claims: (1) there is new evidence

18   of Plaintiff's conditions and the Court should remand for consideration of the evidence;

19   (2) the ALJ erred by assigning little weight to the opinions of Plaintiff's treating

20   physician; and (3) the ALJ erred by discounting Plaintiff's credibility.[3]  (Doc. 11.)  The

21   Commissioner argues that the alleged new evidence does not require a remand and that

22   the ALJ's decision is free from harmful error and is supported by substantial evidence.

23   (Doc. 12.)  The Court considers Plaintiff's claims below.

24       **A.   New Evidence**

25       Plaintiff alleges that he was diagnosed with somatoform disorder and pudendal

26   neuralgia after his date last insured and that these diagnoses require a remand because he

27

28       [3] Plaintiff asserts several other errors.  (Doc. 11.)  Because the Court can resolve
     this matter based on the issues discussed in the order, the Court does not consider these
     other issues.

likely had these impairments before his disability insurance coverage expired.  (Doc. 11 at 8.)

"'[I]n cases involving submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (emphasis added); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review.")   Here, Plaintiff provided the 2014 and 2015 letters to the Appeals Council, but they were not included in the administrative record and, therefore are new evidence.   (Tr. 2, 6.) Plaintiff argues that the Court should remand this matter for consideration of the new evidence.

In accordance with *Mayes v. Massanari*, 276 F.3d 453, 460-62 (9th Cir. 2001), and sentence six of § 405(g), the court may remand to the Commissioner for consideration of additional evidence only if a plaintiff shows that: (1) new evidence is material to his disability; and (2) he has good cause for failing to submit the evidence earlier.  *See Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984) (applying same test to records that were submitted to the Appeals Council, but which the Appeals Council did not appear to consider).  To satisfy the materiality requirement, a plaintiff must show "that the new evidence is material to and probative of his condition as it existed at the relevant time — at or before the disability hearing." *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).  "[T]he new evidence offered must bear directly and substantially on the matter in dispute."  *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984) (new evidence was material when the issue had been expressly considered by the ALJ and was "squarely before the Appeals Council").

### 1.    Evidence of Somataform Disorder (2014 and 2015 Letters)

As evidence of a somatoform disorder diagnosis, Plaintiff has submitted letters from two treatment providers dated December 19, 2014 (letter from Kim DiRE LPC,

SEP, DBH with Healthy Futures), and January 8, 2015 (letter from Dr. Denise Glassmoyer, Psy.D. with Pinnacle Peak Psychology).  (Doc. 11 at 23-25.)  These letters are dated after the ALJ's decision, but before the Appeals Council's September 25, 2015 decision.  The Appeals Council "looked at" those letters but did not make them part of the administrative record and did not consider them.  (Tr. 2, 6); *See Rocha v. Astrue*, 2012 WL 748260, at *4 (D. Ariz. Mar. 7, 2012) (stating that the Appeals Council did not "consider" evidence when it stated that it looked at evidence but did not make it part of the administrative record).  The Appeals Council explained that the ALJ decided Plaintiff's case through September 30, 2013, the date Plaintiff was last insured for disability benefits, but the "new information [was] about a different time.  Therefore, it does not affect the decision about whether [Plaintiff] was disabled at the time [he] was last insured for disability benefits."  (Tr. 2.)

Plaintiff has not shown that the 2014 or 2015 letters are material.  First, in the December 19, 2014 letter, treatment provider Kim DiRe stated that Plaintiff had been her patient for the past several months.  (Doc. 11 at 25.)  She stated that Plaintiff came to her for "information and therapy regarding somatic disorders, due to issues that stem from years of injuries, surgeries, and chronic pain."  (*Id.*)  She noted that Plaintiff "complain[ed] of symptoms including gastrointestinal [issues], sleep disturbances, lethargy and fatigue problems, which can all be tied to somatization and/or pain disorders."  (*Id.*)  She concluded that Plaintiff's "issues and symptoms [were] consistent with those of a somatization disorder."  (*Id.*)  She opined that Plaintiff "is at a level of disability where he is incapable of participating in the workforce."  (*Id.*)  She further stated that "[g]iven his history, it is likely that the condition has existed for some time, and could persist indefinitely."  (*Id.*)

As the Appeals Council noted, the ALJ considered whether Plaintiff was disabled at any time from the alleged onset date through September 30, 2013, the date last insured.  (Tr. 2, 25.)  Ms. Di Re's December 2014 letter does not specifically address that period.  Rather, it pertains to the time of the letter (Doc. 11 at 25 (concluding that Plaintiff "is at a

level of disability . . . .)), and opines that Plaintiff's "condition" has likely "existed for some time." (Doc. 11 at 25.) Other than speculating that Plaintiff's conditions has likely existed for "some time," the 2014 letter does not further describe the temporal reach of Plaintiff's somatization disorder. To satisfy the materiality requirement, a plaintiff must show "that the new evidence is material to and probative of his condition as it existed at the relevant time — at or before the disability hearing." *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987). Because the 2014 letter does not specifically address the time period at issue in the ALJ's decision, it is not material to that decision. Moreover, the 2014 letter concludes that Plaintiff could not "participat[e] in the workforce," but does not assess any specific work-related functional limitations.

Similarly, Plaintiff has not shown that the 2015 letter is material. In that letter, Dr. Glassmoyer discussed her psychological evaluation of Plaintiff. (Doc. 11 at 23-24.) She observed that Plaintiff had difficulty sitting for the fifty-minute session, he was tearful at times, and appeared hopeless. (*Id.* at 23.) She administered two psychological assessments. (*Id.*) Dr. Glassmoyer concluded that Plaintiff had "significant emotional symptoms of Major Depression including sadness, tearfulness, hopelessness, sleep disturbances, fatigue, and concentration and memory problems." (*Id.*) She found that Plaintiff's "profile suggest[ed] that he suffer[ed] from various somatic symptoms including gastrointestinal distress as well as chronic pain." (*Id.*) Dr. Glassmoyer did not assess any specific functional limitations, but opined that it "was unlikely that Plaintiff could maintain consistent employment now or for the foreseeable future." (*Id.*)

Dr. Glassmoyer's 2015 letter does not address the period that the ALJ considered, October 14, 2007 through September 31, 2013. Rather, it pertains to the time of the letter and to the "foreseeable future." (Doc. 11 at 23 (stating that Plaintiff's "chronic pain and emotional distress would make it unlikely that [Plaintiff] could maintain consistent employment now or for the foreseeable future.").) Because the 2015 letter does not address the time period at issue in the ALJ's decision, it is not material to that decision. *See Sanchez*, 812 F.2d at 511.

In addition to containing opinions that are not specific to the time period under consideration in the ALJ's decision, the 2014 and 2015 letters contain information that is similar to information that was before the ALJ.  The administrative record did not include a statement from a treatment provider assessing Plaintiff with somatoform disorder.  However, the non-examining physicians who reviewed the medical record on behalf of the Agency recognized that the record contained evidence that Plaintiff had somatic issues.  For example, the reviewing physicians considered whether Plaintiff met "any somatic listing" at step three of the sequential evaluation process.   (Tr. 95, 113.)  The reviewing physicians conducted a "somatic review" of the medical record.  (Tr. 108.)  The reviewing physicians note a history of "somatic concerns."   (Tr. 110.)   When evaluating Dr. Treegoob's opinion, the reviewing physicians noted that Dr. Treegoob did not separate somatic issues from other psychological concerns.[4]  (Tr. 111, 116.)  The opinions of the state agency physicians indicate that they were aware of evidence of somatic issues even in the absence of a diagnosis of somatoform disorder.

Plaintiff does not allege that somatoform disorder resulted in functional limitations beyond those that are included in the administrative record.  Plaintiff has not shown that evidence of a diagnosis of somatoform disorder in the 2014 and 2015 letters would create a "reasonable probability" of changing the outcome of the administrative decision and therefore these letters do not warrant remand.  *See Mayes*, 276 F.3d at 462.

### 2.	Evidence of Diagnosis of Pudendal Neuralgia

Plaintiff claims that he has new evidence that shortly after his date last insured for disability benefits he was diagnosed with pudendal neuralgia, which he describes as a "debilitating sitting disorder that causes considerable chronic pain and discomfort." (Doc. 11 at 8.)  Plaintiff states that if the matter is remanded to the Agency, he can provide medical evidence of a diagnosis of pudendal neuralgia in the form of a medical report from Dr. Michael Castillo.  (*Id.* at 9.)  Plaintiff has not provided that report to the

---

[4]  Mark Treegoob PHd provided an opinion for the Agency on reconsideration of the initial denial of Plaintiff's application for benefits.  (Tr. 111.)

Court or submitted other evidence to support his assertion that he was diagnosed with pudendal neuralgia.   (Doc. 11.)   There is no indication in the record that Plaintiff submitted evidence of that diagnosis to the Appeals Council.  (Tr. 1-6.)

Plaintiff claims that evidence of a diagnosis of pudendal neuralgia indicates that his "symptoms and complaints" that were thought to relate to his spine also relate to pudendal neuralgia.  (Doc. 11 at 8.)  Plaintiff, however, has not shown that evidence of a diagnosis of pudendal neuralgia is material.   Plaintiff does not allege that pudendal neuralgia resulted in functional limitations other than those limitations that are already included in the administrative record.  Plaintiff alleges that pudendal neuralgia is a sitting disorder.   During the administrative hearing, Plaintiff testified that he could not sit for longer than thirty minutes at a time.  (Tr. 62.)  He also testified that he could not sit for eight hours a day even if allowed to change positions.   (Tr. 54.)   The ALJ partially credited this testimony and assessed an RFC finding that Plaintiff could not sit for longer than thirty minutes at one time and must be able to change positions of sitting and standing.  (Tr. 18.)  Plaintiff does not explain how a diagnosis of pudendal neuralgia would alter the assessed RFC or the outcome of the administrative proceedings.

Therefore, Plaintiff has not shown that an alleged diagnosis of pudendal neuralgia is material because he has not shown a "reasonable probability" that the new evidence would have changed the outcome of the administrative hearing.  *See Mayes*, 276 F.3d at 462.  Accordingly, new evidence of a diagnosis of pudendal neuralgia does not require remand.

## B.     Weight Assigned Medical Source Opinions

Plaintiff argues that the ALJ erred by assigning little weight to the opinions of treating physician Kenneth Fisher, M.D.  (Doc. 11 at 7.)  In weighing medical source opinion evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally,

more weight is given to a treating physician's opinion.  *Id.*  The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion.  *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than opinions from treating or examining physicians.  *Lester*, 81 F.3d at 831.  Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631.

### 1.    Dr. Fisher's Opinions

On March 4, 2013, Dr. Fisher opined that Plaintiff could not stand continuously for six hours. (Tr. 563.)  If Plaintiff were stationary, pain would set in within about ten to fifteen minutes of standing.  (*Id.*)  Plaintiff's pain would be present, but more tolerable with mild activity and he could tolerate up to an hour of standing under those conditions.  (*Id.*)  Dr. Fisher also opined that Plaintiff could sit for one to two hours "until his pain level [reached] a 9 or 10 on a scale of 1 to 10." (Tr. 564.)  He opined that changing positions from sitting to standing seemed to help, but Plaintiff could not endure sitting or standing for a length of time required for "adequate job performance."  (*Id.*)  In April 2013, Dr. Fisher opined that Plaintiff could stand or walk less than two hours in an eight hour day, and that Plaintiff could only sit for thirty minutes a day.  (Tr. 530-31.)  In

February 2014, Dr. Fisher opined that Plaintiff needed to lie down periodically throughout the day and that he would be absent, tardy, or need to leave work early more than three times a month.[5]   (Tr. 599.)

### 2.   The ALJ's Assessment of Dr. Fisher's Opinions

The ALJ gave Dr. Fisher's March 2013 opinion "little weight" because it was based on Plaintiff's subjective complaints.  (Tr. 21.)   The ALJ gave Dr. Fisher's April 2013 and February 2014 opinions little weight because they were completed on check-box forms.  (Tr. 21.)   Finally, the ALJ gave little weight to all three of Dr. Fisher's opinions because she concluded that they were overly restrictive because the limitations were inconsistent with the medical evidence.  (*Id.*)  Plaintiff challenges only the ALJ's conclusion that Dr. Fisher's opinions were inconsistent with the medical record. (Doc. 11.)  The Commissioner responds to Plaintiff's argument, but does not defend the ALJ's other reasons for rejecting Dr. Fisher's opinions.  (Doc. 12.)   Accordingly, the Court only considers whether the ALJ erred by rejecting Dr. Fisher's opinions as inconsistent with the medical record.[6]

To support the conclusion that Dr. Fisher's opinions were not supported by the treatment record, the ALJ cited Dr. Fisher's March 21, 2013 treatment note and an April 2, 2013 treatment note from Physician Assistant (PA) Michael Peterik.  (Tr. 21 (citing Admin. Hrg. Exs. 11F at 9, 12; 10F at 4).)   The ALJ stated that during the March 21,

---

[5]   Dr. Fisher also opined that Plaintiff was unable to drive.  (Tr. 531.)  The Court does not need to consider that limitation because the vocational expert testified that Plaintiff could perform jobs that did not involve driving.  (Tr. 77-78.)

[6]   Although the Court does not need to resolve this issue, the ALJ improperly rejected Dr. Fisher's opinions on the ground that his April 2013 and February 2014 were completed on check-box forms because those opinions were based on his multi-year treatment history with Plaintiff and his treatment notes.  *See Mansour v. Astrue*, 2009 WL 272865, at *6 n.14 (C.D. Cal. Feb. 2, 2009) (rejecting contention that a treating physician's opinion on a "check-the-box" form lacked supporting evidence to substantiate the responses on the form because the physician's treatment notes in the record supported his finding on the opinion form).   The ALJ also improperly rejected Dr. Fisher's opinions based on her conclusion that those opinions were based on Plaintiff's subjective complaints because the ALJ did not provide legitimate reasons for discounting Plaintiff's subjective complaints, and Dr. Fisher did not question Plaintiff's credibility.

- 17 -

2013 appointment, Plaintiff had a normal examination of his spine, normal range of motion in his extremities, and denied neck pain, back pain, myalgias, arthralgias, gait abnormality, and muscle weakness.  (Tr. 21.)  The ALJ stated that the April 2, 2013 treatment note indicated that Plaintiff had grossly normal strength and tone.  (*Id.*)

Plaintiff asserts that the ALJ erred by rejecting Dr. Fisher's opinions as inconsistent with these two treatment notes.  Plaintiff argues that Dr. Fisher did not conduct a physical examination during the March 21, 2013 appointment.  (Doc. 11 at 5.) Plaintiff states that he saw Dr. Fisher on that day for a medication refill and Dr. Fisher's treatment notes for that day are a "template" of a normal examination, but do not reflect findings from an actual physical examination.  (*Id.*)  Dr. Fisher's March 21, 2013 treatment note states that Plaintiff "presented with ~ generic.  Pt. [patient] here for RX refills." (Tr. 536.)  The Commissioner does not dispute Plaintiff's assertion that the March 21, 2013 treatment note is a template and that it does not indicate that Dr. Fisher conducted a physical examination on that date.  (Doc. 12 at 9.)  Rather, she asserts that it was reasonable for the ALJ to rely on that medical record.  (*Id.*)

An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The ALJ properly rejects a treating or examining physician's opinion when it "is not well-supported" or "is inconsistent with other substantial evidence in the record."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007.)  Dr. Fisher's treatment note from March 21, 2013 appears to be a form that does not include specific examination findings and therefore it does not constitute substantial evidence to support the ALJ's rejection of Dr. Fisher's March 4, 2013 opinion.

The ALJ also discounted Dr. Fisher's opinions because she found them inconsistent with an April 2, 2013 treatment note indicating that Plaintiff had grossly normal strength and tone.  (Tr. 21.)  The record reflects that Dr. Fisher referred Plaintiff to PA Peterik at Arizona Arthritis & Rheumatology Associates for an evaluation of back

pain in April 2013.   (*Id.* (citing Tr. 510-13).)   During an April 2, 2013 appointment, PA Peterik performed a physical examination and found that Plaintiff had grossly normal strength and tone.  (Doc. 12 at 9 (citing Tr. 511-12).)  Plaintiff argues that the ALJ erred by relying on this treatment note to reject Dr. Fisher's opinions because the April 2, 2013 treatment note was completed by PA Peterik, not Dr. Fisher.   (Doc. 11 at 6.)   The Commissioner argues that the ALJ properly considered PA Peterik's medical findings when assigning weight to Dr. Fisher's opinions and that PA Peterik's April 2, 2013 treatment note constitutes substantial evidence to support the ALJ's conclusion that Dr. Fisher's opinions was "overly restrictive" and not supported by objective medical evidence.  (Doc. 12 at 9.)

As the Commissioner argues, because an ALJ must consider the record as a whole, the ALJ did not err by considering PA Peterik's findings when determining how much weight to afford Dr. Fisher's opinions.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 95 (9th Cir. 2004) (affirming the ALJ's rejection of a treating physician's opinions based on a conclusion that they conflicted with a consulting physician's examination findings).  However, a single treatment note does not constitute substantial evidence to support the ALJ's rejection of Dr. Fisher's opinions.  Additionally, the ALJ did not explain how PA Peterik's findings of grossly normal strength and tone detracted from Dr. Fisher's opinions regarding Plaintiff's limited ability to sit due to pain, his need to lie down during the day, and the number of times he would be absent, tardy, or leave work early.   Therefore, the Court determines that the ALJ's reasons for discounting Dr. Fisher's opinions are not supported by substantial evidence.

### C.    The ALJ's Credibility Determination

Plaintiff also asserts that the ALJ erred by discounting his credibility without providing clear and convincing reasons.  (Doc. 11 at 7.)  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding his pain or other symptoms is credible.  *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th

Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce his pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d at 1160–61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that he suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.

At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of his symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160

(quoting *Lingenfelter*, 504 F.3d at 1036).  Because the ALJ did not specifically find evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.

The ALJ discounted Plaintiff's symptom testimony because she found that: (1) the severity of Plaintiff's reported symptoms was not supported by normal findings in the medical record; (2) Plaintiff's "daily activities were not as limited as one would expect considering the complaints of disabling symptoms"; (3) treatment was "generally successful" in controlling Plaintiff's symptoms; (4) Plaintiff worked after the alleged disability onset date; and (5) Plaintiff took computer animation classes.  (Tr. 22-23.)

## 1.      Not Supported by the Medical Evidence

The ALJ discounted Plaintiff's credibility because she found that the medical record included "normal findings on examination," which did not support his reported symptoms.  (Tr. 22.)  The absence of fully corroborative medical evidence cannot form the sole basis for rejecting the credibility of a claimant's subjective complaints.  *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (it is legal error for "an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"), *superseded by statute on other grounds as stated in Bunnell v. Sullivan*, 912 F.2d 1149 (9th Cir. 1990); *see also Burch*, 400 F.3d at 681 (explaining that the "lack of medical evidence" can be "a factor" in rejecting credibility, but cannot "form the sole basis"); *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) (same).  Thus, absent some other stated legally sufficient reason, this ground for the ALJ's credibility determination cannot stand.  As discussed below, although the ALJ provided several other reasons for discrediting Plaintiff's subjective complaints that could constitute clear and convincing reasons in support of a credibility determination, these reasons are not supported by substantial evidence in the record and, therefore, do not support the ALJ's credibility determination in this case.

/ / /

## 2.      Daily Activities

In discounting Plaintiff's credibility, the ALJ noted that Plaintiff runs errands, goes to the grocery store, uses an elliptical machine, does light yard work, cares for a pet dog, drives a car, took a trip, does yoga, goes to movies, sings at restaurants, has gone out to dinner, checks email, and can manage his own finances.  (Tr. 22.)  An ALJ may rely on activities that "contradict claims of a totally debilitating impairment" to find a claimant less than credible.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Plaintiff asserts that the ALJ incorrectly stated that Plaintiff did hot yoga throughout the period of his disability claim.  (Doc. 11 at 6.)  When assessing Plaintiff's credibility, the ALJ referred to a March 31, 2011 treatment note which states that Plaintiff was "doing hot yoga."  (Tr. 22 (citing Admin. Hrg. Ex. 22F at 1); Tr. 645.)   That treatment note does not indicate how frequently Plaintiff did hot yoga and the ALJ did not cite any other record evidence indicating that Plaintiff continued doing hot yoga after March 2011.  During the administrative hearing, Plaintiff testified that one of his doctors recommend he try hot yoga for his back pain.  (Tr. 46.)  Plaintiff testified that yoga helped for a little bit, but later made his pain worse so he stopped doing it.  (Tr. 46-47.)  The ALJ did not discuss these details about Plaintiff's participation in hot yoga.  (Tr. 22.)  A single treatment note indicating that Plaintiff did hot yoga in March 2011 does not constitute a clear and convincing reason for discounting Plaintiff's credibility.

Plaintiff also asserts that the ALJ erred by relying on evidence that he took a trip to discount his credibility because the ALJ referred to a 2008 trip.  (Doc. 11 at 5, Tr. 23 (citing Admin. Hrg. Ex. 5F at 2).)  A January 21, 2008 treatment note states that Plaintiff was going to Europe.  (Tr. 452.)  Plaintiff does not dispute that he went to Europe, but argues that the 2008 trip is not relevant because it was before the amended disability onset date.  As the ALJ noted, a trip to Europe requires "long intercontinental travel." (Tr. 23.)  Evidence that Plaintiff took such a trip is inconsistent with his reported inability to sit for extended periods of time.  However, because evidence of the trip is from 2008

and the record indicates that Plaintiff's condition worsened in subsequent years (Tr. 563), the 2008 trip is not a clear and convincing reason for discounting Plaintiff's credibility.

Plaintiff does not challenge the ALJ's determination that he participated in the other activities identified in her opinion.  (Tr. 22.)  The Commissioner argues that even if yoga and the trip to Europe are excluded from Plaintiff's activities, "the ALJ's finding that Plaintiff's activities of daily living were inconsistent with his claims of disability from back pain and depression is supported by substantial evidence."  (Doc. 12 at 13.)  As set forth below, the Court disagrees.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, a claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that "contradict [the claimant's] other testimony," or that are "transferable work skills."  *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

The ALJ's decision lists Plaintiff's daily activities and concludes that he is not credible because the extent of these activities "is not as limited as one would expect considering the complaints of disabling symptoms."  (Tr. 22.)  But the ALJ fails to identify any specific contradictions between Plaintiff's reported symptom testimony and his activities. *But see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (concluding that the ALJ properly found claimant's claimed inability to "tolerate even minimal human interaction was inconsistent with her daily activities . . . including walking her two children to and from school, attending church, shopping, and taking walks . . . .").

Additionally, the ALJ did make any findings on the transferability of the activities at issue to a work setting, which is the only other acceptable grounds for using daily activities to form the basis of an adverse credibility determination.  *See Orn*, 495 F.3d at

639.  The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Because the ALJ did not identify inconsistencies between Plaintiff's symptom testimony and his activities, or make any findings on the transferability of Plaintiff's activities to a work setting, Plaintiff's daily activities do not constitute a clear and convincing reason to discount his credibility.

### 3.    Symptoms Controlled by Treatment

The ALJ also discredited Plaintiff's subjective complaint testimony based on her conclusion that the record reflected that treatment had been "generally successful in controlling [Plaintiff's] symptoms."  (Tr. 22.)  The ALJ noted that on May 16, 2012, Plaintiff reported that "Vicodin worked" and he testified that he did not have side effects from his medications.  (*Id.*)  The ALJ further noted that on July 15, 2013, Plaintiff "denied depression, anxiety, or panic attacks . . . ."  (*Id.*)

Evidence that treatment can effectively control an impairment may be a clear and convincing reason to find a claimant less credible.  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *Warre v. Comm'r, of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").  Here, however, substantial evidence in the record does not support the ALJ's conclusion.  Although a single treatment note indicates that Vicodin "still work[ed]" in May 2012, (Tr. 486), other treatment records reflect that Plaintiff consistently reported chronic back pain (Tr. 363, 382, 385, 387, 388-89, 391, 404-05, 411-12, 417-18, 423-24, 431-33, 441, 510, 532, 546, 566, 606, 610, 646), and in December 26, 2012, Plaintiff reported that Vicodin was no longer working.  (Tr. 546.)  *See Lankford v. Astrue*, 2013 WL 416221, at *5 (N.D. Cal. Jan. 31, 2013) (concluding that the ALJ's finding that a claimant's pain was controlled did not support his credibility assessment because the ALJ failed to recognize that the medication did not resolve the problem and claimant continued to complain of chronic

- 24 -

pain).  Considering the consistent evidence of Plaintiff's back pain, a single notation that Vicodin worked is not a clear and convincing reason to discount Plaintiff's credibility.

The ALJ also concluded that treatment controlled Plaintiff's symptoms related to depression because he denied depression, anxiety, or panic attacks on July 15, 2013. (Tr. 22 (citing Admin. Hrg. Ex.19F at 12).)  Plaintiff asserts that Dr. Fisher's July 15, 2013 treatment note is on a template that includes standard findings that Dr. Fisher did not change because he was not treating Plaintiff for depression.  (Doc. 11 at 6.)  The Commissioner responds that Dr. Fisher's treatment notes regularly note such denials and that the ALJ reasonably relied upon those treatment notes.  (Doc. 12 at 10 (citing Tr. 412, 424, 441, 535, 537, 542, 547, 602, 607).)  The Court agrees that the ALJ reasonably relied on Dr. Fisher's treatment notes indicating that Plaintiff denied depression. Accordingly, the ALJ gave a legally sufficient reason for concluding that Plaintiff's depression was controlled with treatment.  However, the ALJ did not indicate which portion of Plaintiff's subjective complaints she discredited based on this conclusion. (Tr. 22.)

### 4.      Work after Disability Onset Date

The ALJ also discounted Plaintiff's credibility because there was evidence that he worked as a singer after the disability onset date.  (Tr. 17 (citing Admin. Hrg. Ex. 14E at 5); Tr. 22, 23.)  The ALJ concludes that singing "involves considerable physical and mental activity" but does not cite any evidence indicating the amount of physical or mental effort required for Plaintiff's singing engagements.  (Tr. 23.)  In making this determination, the ALJ cited a Function Report that Plaintiff completed in April 2013. (Tr. 17 (citing Admin. Hrg. Ex. 14E at 5); Tr. 302-310).  In that report, Plaintiff stated that "I used to sing at restaurants but it has become a challenge."  (Tr. 306.)  He explained that he planned to "fulfill a couple of commitments this year, but [was] not accepting new gigs.  I have up to four nights I am hoping to do all year."  (*Id.*)  The ALJ stated that Plaintiff performed for two to three hours (Tr. 17), but the portion of the

record that ALJ references does not indicate the duration of Plaintiff's singing engagements. (Tr. 306.)

However, during the 2014 administrative hearing Plaintiff testified that since 2011 he has been self-employed as a singer and his performances usually lasted two to three hours. (Tr. 38-39.) He testified that the performances used to be therapeutic for him, but that recently after thirty minutes of singing his back burned and he took medication. (Tr. 39.) Plaintiff also testified that his wife drove him to his performances and helped with the equipment. (*Id.*) The ALJ did not discuss Plaintiff's testimony regarding his singing engagements and did not cite any evidence regarding the frequency of the singing engagements. (Tr. 17, 22, 23.)

The Function Report that the ALJ cites states that Plaintiff planned to do four singing engagements in 2013 and that he was not accepting further engagements. (Tr. 305.) During the administrative hearing, Plaintiff testified that he did about six singing engagements in 2013. (Tr. 38-39.) Evidence that Plaintiff engaged in about six singing engagements in 2013 that lasted two to three hours is not a clear and convincing reason to discount his credibility because this work was intermittent. *See McBriety v. Colvin*, 2014 WL 3778552, at *6 (D. Or. Jul. 30, 2014) (concluding that the ALJ erred by discounting the plaintiff's credibility based on her "intermittent, less-than full time" work.)

### 5.      Computer Animation Classes

The ALJ also discounted Plaintiff's credibility because he "had taken classes in computer animation." (Tr. 23.) To support his conclusion, the ALJ cites an April 2012 progress note from Dr. Treegoob stating that Plaintiff "took classes on computer animation, which he can do at home, loves it."[7] (Tr. 489-90.) That same progress notes indicates that Plaintiff had severe back pain, was "rapidly deteriorating," was stressed, and depressed. (Tr. 490.) Plaintiff does not dispute that he took computer animation classes. (Doc. 11.) However, the ALJ did not cite any evidence regarding the frequency

---

[7] Dr. Treegoob treated Plaintiff at West Valley Behavioral Health. (Tr. 475-94.)

or duration of these classes.  (Tr. 23.)  Plaintiff's apparent attempt to find an activity he could do at home despite his reported symptoms, *see* Tr. 490 (stating that Plaintiff "trying things he was passionate about"), does not undermine his credibility considering the lack of evidence that taking computer animation classes contradicted any of Plaintiff's specific reported symptoms.

Based on the Court's review of the record, with the exception of her conclusion the Plaintiff's depression was controlled with treatment, the ALJ did not provide legally sufficient reasons that are supported by substantial evidence to support her adverse credibility determination.  Therefore, the ALJ erred in discounting Plaintiff's subjective complaints related to his back pain.

## VII.    Summary and Remedy

Considering the record as a whole, the Court concludes that the ALJ erred in rejecting Dr. Fisher's opinions and Plaintiff's subjective complaints.  These errors were not harmless because the vocational expert testified that an individual with the limitations that Dr. Fisher and Plaintiff identified would be unable to sustain work.  (Tr. 79-81.) Therefore, the Court reverses the Commissioner's disability determination.

Because the Court has decided to vacate the Commissioner's decision, it has the discretion to remand the case for further development of the record or for an award benefits.  *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998).  Plaintiff asks the Court to remand for a determination for benefits, or in the alternative, for further proceedings.  (Doc. 11 at 10-11.)   The Commissioner does not address this issue. (Doc. 12.)

The decision to remand for benefits is controlled by the Ninth Circuit's "three-part credit-as-true standard."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  Under that standard, evidence should be credited as true and an action remanded for an immediate award of benefits when each of the following factors are present: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

evidence, whether claimant's testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citing *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008)); *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). As discussed below, Plaintiff has satisfied all three factors of the credit-as-true standard.

On the first factor, there is no need to further develop the record. *See Garrison*, 759 F.3d at 1021 (citing *Benecke*, 379 F.3d at 595) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).   On the second factor, the Court has concluded that the ALJ failed to provide legally sufficient reasons that are supported by substantial evidence in the record for rejecting the Dr. Fisher's opinions and failed to provide legally sufficient reasons for rejecting Plaintiff's subjective complaints.  On the third factor, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand because the vocational expert testified that a person with the limitations that Dr. Fisher identified and to which Plaintiff testified, would be incapable of sustained full-time work.  Therefore, based on this evidence, Plaintiff is disabled.  *See Garrison*, 759 F.3d at 1022, n.28 (stating that when the vocational expert testified that a person with the plaintiff's RFC would be unable to work, "we can conclude that [the plaintiff] is disabled without remanding for further proceedings to determine anew her RFC.").

Having concluded that Plaintiff meets the three criteria of the credit-as-true standard, the Court considers "the relevant testimony [and opinion evidence] to be established as true and remand[s] for an award of benefits[,]" *Benecke*, 379 F.3d at 593 (citations omitted), unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021) (citations omitted).  Considering the record as a whole, there is no reason for serious doubt as to whether Plaintiff is disabled.  *See Garrison*, 759 F.3d at 1021 (stating that that when the court conclude "that a claimant is otherwise entitled to an

immediate award of benefits under the credit-as-true analysis, [the court has] flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). The ALJ failed to set forth specific and legitimate reasons supported by substantial evidence for rejecting Dr. Fisher's opinions and failed to provide clear and convincing reasons for discounting Plaintiff's credibility. When a hypothetical question was posed to the vocational expert incorporating the limitations included in Dr. Fisher's opinions and Plaintiff's testimony, the vocational expert testified that such limitations would preclude an individual from sustained work activity. (Tr. 79-81.) On the record before the Court, Dr. Fisher's opinions and Plaintiff's subjective complaints should be credited as true and the case remanded for an award of benefits.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision denying benefits is reversed and this matter is remanded for a determination of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and terminate this case.

Dated this 22nd day of June, 2016.


_____

Bridget S. Bade
United States Magistrate Judge